# STATE v. HENRY L. FESTE.[1]

April 6, 1939.

No. 31,942.

*Erling Swenson,* for appellant.

*Ed J. Goff,* County Attorney, and *Lucien A. Selover,* Assistant County Attorney, for the State.

GALLAGHER, CHIEF JUSTICE.

Appeal from an order denying defendant's blended motion to vacate and set aside the findings and conclusions of the trial court or for a new trial.

On October 18, 1937, Grace Eliason (now Grace Eliason Feste) filed a complaint in the municipal court of Minneapolis against Henry L. Feste, defendant, charging him with being the father of an illegitimate child born to her on the 26th day of the previous September. A week later defendant appeared in municipal court, waived preliminary examination, and was released on his own recognizance for appearance at the next general term of the district court of Hennepin county. On November 24 following he married complainant. The action was tried on December 9, and the state

[1]Reported in 285 N. W. 85.

called Mrs. Feste as a witness. She was permitted to testify although the defendant refused to consent thereto, and his objections to the admission of her testimony on the statutory ground that a wife cannot testify against her husband without his consent [2 Mason Minn. St. 1927, § 9814(1)] were overruled. At the close of plaintiff's case defendant's motion for dismissal was denied. Subsequently the court made findings of fact and conclusions of law wherein it was adjudged and decreed that defendant was the father of the child. The only basis therefor was the testimony of Mrs. Feste, the wife. On September 8, 1938, the defendant moved for a new trial on the grounds that this testimony was improperly admitted and that the decision, findings of fact, and conclusions of law made and filed by the court are contrary to law. An order denying this motion was entered, from whence defendant appeals. 2 Mason Minn. St. 1927, § 9814(1), provides:

"A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage. But this exception does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other, nor to an action or proceeding for abandonment and neglect of the wife or children by the husband."

This statute codifies the common law. See State v. Armstrong, 4 Minn. 251 (335); State v. Frey, 76 Minn. 526, 79 N. W. 518, 77 A. S. R. 660. To determine its application to the instant case, the reasons for the rules which it embodies must be ascertained.

The family is the basic unit of society as the cell is of the body. To cause strife between the parties to a marriage contract is to undermine this institution and thus to weaken the entire social structure. Courts and legislatures have recognized the burden which antagonistic interests impose upon the intimate relations of husband and wife and the harm to the public which results from marital discord, and have, as a general rule, refused for this reason

to permit one spouse to testify against the other without the latter's consent. See R. S. 1851, c. 95, § 53, p. 478; 1 Greenleaf, Evidence (16 ed.) § 333c; McKelvey, Evidence (3 ed.) § 221; 5 Jones, Evidence (2 ed.) §§ 2128, 2129. It may be contended that the union of the mother of an illegitimate child and a man who denies her claim that he is the father will not be a harmonious association in any event. But we are of the opinion that the fact that wedlock is entered into under unfavorable circumstances affords additional reason why it should not be subjected to further strain. Speculation concerning instances where the parties do not live together as husband and wife is unnecessary since the settled case which we have been called upon to consider reveals no such state of affairs. Consideration of the effect of our decision on the interests of the child is also beside the point since if the testimony of the wife was admissible it was, in view of 2 Mason Minn. St. 1927, § 9814(1), only because of a wrong against her.

As our statute indicates, the general rule does not apply to civil actions or criminal offenses by one mate against the other. As was said in State v. Frey, 76 Minn. 528, 79 N. W. 518:

"The common-law rule was that husband or wife could not testify for or against each other in any legal proceeding to which the other was a party. The rule rests on principles of public policy, which require that confidence between husband and wife should be conserved to the fullest extent, and it is enforced without reference to when the marriage relation began. This general rule of the common law was subject to the exception that, in all cases of personal injuries committed by the husband or wife against the other, the injured party was a competent witness against the other. The exception was allowed from necessity, for the protection of the parties, especially the wife, in the marriage relation, and partly for the sake of public justice. 1 Greenleaf, Ev. §§ 334, 336, 343; Wharton, Ev. § 393."

It would, of course, be quite unreasonable to refuse to permit a spouse to testify that she is being abused on the ground that so to do would disturb conjugal harmony. Where there is oppression

of one by the other of a criminal or actionable character, it can be safely assumed that there are no cordial relations to protect. See 4 Wigmore, Evidence (2 ed.) § 2239. We are here concerned, however, with an offense which occurred prior to the marriage. In such a case the proper inference appears to be that any grievance existing between the parties was settled before the ceremony. Under these circumstances the considerations which support the general rule are applicable. The exception embodied in our statute deals with the parties in the marriage relation, and not as to acts committed before the marriage. State v. Frey, *supra,* p. 529, 79 N. W. 518. Therefore we hold that the testimony in question was improperly admitted. The result at which we have arrived is supported by State v. Frey, *supra,* where the statute with which we are here concerned was considered, and it was held that the testimony of a woman whom the defendant in a criminal action had married after the offense but before the trial was improperly admitted over his objection. Other jurisdictions are, almost without exception, in accord with the view expressed therein. See State v. McKay, 122 Iowa, 658, 98 N. W. 510; People v. Schoonmaker, 117 Mich. 190, 75 N. W. 439, 72 A. S. R. 560; Wilson v. State, 125 Ark. 234, 188 S. W. 554; People v. Curiale, 137 Cal. 534, 70 P. 468, 59 L. R. A. 588; Norman v. State, 127 Tenn. 340, 155 S. W. 135, 45 L.R.A.(N.S.) 399; Miller v. State, 37 Tex. Cr. R. 575, 40 S. W. 313; United States v. Gwynne (D. C.) 209 F. 993. See, generally, 76 A. L. R. 1088.

It is argued by the respondent that while proceedings under our illegitimacy statutes are criminal in form they are civil in substance. We see no reason why this fact should affect the rule. The previously considered rationale of the provisions of the statute applies with equal force to both types of cases. No decisions have been called to our attention which hold otherwise.

Order reversed and new trial granted.

Mr. Justice Hilton, incapacitated by illness, took no part.